We will hear argument next in Case 14-1457, Betterman v. Montana. Mr. Rowley. Mr. Chief Justice, and may it please the Court. The Speedy Trial Clause applies to a criminal prosecution through its culmination in sentencing. It is not cut off when the defendant pleads or is found guilty. The Court has said that the clause guarantees an early and proper disposition of a criminal charge. And that guarantee applies to the guilt stage of a prosecution, when most defendants plead guilty, and to the sentencing stage, which may be the only place in a criminal prosecution today when a defendant actually mounts a defense. Ginsburg. Does the Federal Speedy Trial Act, not the constitutional provision, but the legislation, does that cover sentencing or is that limited to trial? Your Honor, my understanding is that it's limited to trial. The Court has recognized specific interests that are protected by the Speedy Trial Clause, and those interests apply not just to presumptively innocent defendants, as the State and the United States suggest, but some of them apply specifically to guilty defendants. In Barker, for instance, the Court notes that one of the interests that are protected by this clause, that is protected by this clause, is the interest in rehabilitation, and that a prolonged period of detention in jail can affect a defendant's rehabilitation. Well, that's specific to a guilty defendant. And in Smith v. Hooey, the Court noted that even though the defendant had been incarcerated in Federal prison, that that defendant could still be prejudiced by a prolonged delay in the State prosecution that followed, because it could affect his ability to seek a concurrent sentence. That interest also is specific to a guilty defendant. So this sharp line between the guilt stage of a prosecution and the criminal stage and the sentencing stage of a prosecution isn't supported by this Court's Speedy Trial precedents. Ginsburg. Ginsburg. What do you do with the all of our Speedy Trial decisions, say there's only one remedy, and that is case over, dismissal is the only appropriate remedy? But you're not arguing that, I understand, with respect to sentencing. Yes, Your Honor. You are arguing. No, we were not arguing that. So it's different. The Speedy Trial requirement says if you don't comply with the constitutional provision, dismissal. But you're saying sentencing is not the same as trial, to that extent that the remedy is different. Your Honor, at the guilt stage of the prosecution, the outcomes are binary. So the defendant is either adjudicated guilty or the charges are dismissed or the defendant is acquitted. So there's two possible outcomes at the guilt stage, guilt or innocence. At sentencing, the situation is quite different. There's greater opportunity for tailoring, which is what the Court requires per Morrison, and there may be a greater need for tailoring because the defendant has been adjudicated guilty. So in the sentencing context where courts have wide discretion, where there's a range of possible sentences, where there's a range of possible outcomes, tailoring – there's greater opportunity for tailoring. So what would the remedy be in a case like this? Your Honor, we submit that a proper remedy in a case like this would be to reduce Mr. Betterman's sentence by the period of delay. And the Montana Supreme Court concluded that the period of unjustified delay here was 14 months. Kennedy. Well, he was serving on another sentence. He was serving sentence for another crime. Yes, Your Honor. He was – so he got time-served credit on the prior sentence that he was serving. But that period of delay, the 14 months, was not credited to his sentence on the bail jumping sentence, which is the sentence that's at issue here. And we submit that a proportionate remedy, an appropriate remedy, would be to reduce that sentence by the period during which he was denied access to rehabilitation programs and suffered the anxiety that is detailed in his affidavit, and that that would be a way to go. The lower courts have applied that sort of remedy to sentencing delays. And another possible outcome in another case would be simply to vacate the remaining portion of the defendant's sentence. But here we submit that a tailored remedy would be just reducing his sentence by that. What do you make of the fact that the Sixth Amendment says that the accused shall enjoy the right to a speedy and public trial by an impartial jury? Your Honor, the impartial jury clause doesn't cut off or limit the word trial. We know that because the Court has recognized that the public trial right might apply at a suppression hearing. And there's no jury convened at a suppression hearing. The Court concluded that in Waller. So the impartial jury clause applies to the portions of a criminal prosecution, the stages of a prosecution where a jury is actually impaneled. And if you go back to the purpose of an impartial jury clause, which was to prevent jurors from offering evidence against the defendant, it makes good sense that it would apply to the stages of a criminal prosecution where a jury is convened. Sotomayor, if we were to disagree with you and say that there's no Sixth Amendment right and there was only a due process right, have you waived any argument that you meet the due process standard? We haven't included that. We didn't include that in the question presented, Your Honor. And the Montana Supreme Court rejected that challenge. It applied a due process test and concluded that under a due process analysis, Mr. Betterman wouldn't be entitled to relief. And that gets to an important point here, because of the law. Well, I understand that. So you're admitting you're giving up that its analysis under the due process clause might have been wrong. Your Honor, we are not advancing that claim here. And so there is a significant difference, we submit, between the due process analysis and the Barker test that this Court has applied under the Sixth Amendment speedy trial right. And that is that under a Barker analysis, prejudice may be presumed, and Barker also addresses specific forms of prejudice that may flow from a delay in a criminal prosecution. The Lovasco test that is applied under a due process analysis does not address some of those specific forms. I agree. But why do you think Lovasco applies at all? Meaning that's to pre-indictment delay, where we were creating an exception and saying, generally, you have, the State has, the period of statute of limitations to bring an action. Your Honor, that's not true. If you want to cut them off from having that right, you need to show actual prejudice. Your Honor, that's the test that the Montana Supreme Court applied below. It is the test that other courts that have rejected the Sixth Amendment's speedy trial rights application at sentencing, they have pivoted to the due process test in Lovasco. And that test creates a significant burden. For example, Mr. Raleigh, just to continue on this line of questioning, there's another case that we have which dealt with civil forfeitures, which is the $8,850 in U.S. currency case, where it said, well, we're going to do a due process analysis, but we're going to take the Barker factors as our test for that due process analysis. So I think one of the questions that Justice Sotomayor is asking is why wouldn't that be equally appropriate here? In other words, even if, and I'm not saying that this is right, but even if there's this is falls within the due process box rather than the Sixth Amendment box, that there's still a further question as to whether the Lovasco approach is right or whether this U.S. currency approach is right. Your Honor, that's what the Montana Supreme Court attempted to do. So it essentially modified the Lovasco test and tried to draw on Barker principles in applying it. But if you compare the result in this case to, say, the result in the Burkett case, where the Court analyzed the specific forms of prejudice that are at issue in a pretrial or pre-sentencing delay situation, and if you don't presume prejudice or require the State prosecution to rebut articulated prejudice, particularized prejudice that's been articulated by the defendant, the Court there found a violation, and the Court here, despite modifying Lovasco, did not find a violation. And so the test is still inadequately protective. Kagan. Kagan. I guess I'm just not sure what you mean by that, because in this other case, the civil court found four factors of Barker, and if that were the result of the due process approach, I mean, it just wouldn't make any difference which box it was in. That would certainly be true, Your Honor, but that's not what the Montana Supreme Court here did. So it didn't apply all the factors in Barker. It didn't apply Barker in a straightforward fashion because it approached prejudice the same way that Lovasco did. It required the defendant to make an affirmative showing of prejudice. It required that that showing be substantial. That's different from the Barker test. And we submit also that given the specificity of this right, that it's enumerated in the Sixth Amendment, that it would not be appropriate for the Court to shunt that interest, that set of interests that are enumerated in the Sixth Amendment into the due process test, that the better approach is to do what the lower courts have done, which is to take the Barker framework, which already exists, and apply it in straightforward fashion to a delay at sentencing. Sotomayor, but you're not asking us to do it in a straightforward fashion. That's what Justice Ginsburg asked you, because you're giving up the Barker remedy. Your Honor, the lower courts in applying Barker to the sentencing context have fixed more tailored remedies in recognition of the fact that there may be a difference between a delay at the guilt stage and a delay at sentencing because now the defendant has been convicted. And so the lower courts in applying Barker have done this. They have tailored remedies. They have applied remedies that leave the conviction standing and try to fix some proportionate remedy for the delay at the sentencing. Sotomayor, so why don't you think that they've done the same thing under the Due Process Clause, recognizing that it is unfair to undo a conviction merely for sentencing delay because you're no longer presumed innocent, you're now guilty? The key to this, Your Honor. Why isn't the Due Process test that's being applied that modification? Your Honor, the reason why the Due Process test, as it's been applied by the lower courts, doesn't do the job is because they continue to require an affirmative showing of prejudice. So they don't presume prejudice, which may be significant. Washington, the case out of the Fifth Circuit that we cite, illustrates this point because the court there didn't presume prejudice. And as the Court explained in Doggett, it may be important to presume prejudice because it is sometimes hard to show the effect of a delay on the defendant's defense or other forms of prejudice. And so even the courts that have applied Lovasco and have modified it still don't presume prejudice, still don't require the prosecution to make a showing in response to articulated prejudice, they just apply Lovasco and require an affirmative showing of substantial prejudice. So even this modified version that you see in the Montana Supreme Court's opinion below, we submit as inadequate and also not appropriate because there is this enumerated right in the Sixth Amendment and it shouldn't be shunted into the court of law. Alitoso, when you say prejudice should be presumed, do you mean it should be presumed conclusively? Could it be rebutted? Yes, Your Honor, it could be rebutted. And indeed, in a case like this where the defendant has articulated specific forms of prejudice, I was denied access to rehabilitation programs, I suffered anxiety, the State ought to be able to come in and rebut that presumption. Now, here, despite those specific forms of prejudice being set out in the motion to dismiss that Mr. Betterman filed, the State did not offer that evidence. The first evidence that we saw was in the briefing on the merits in this Court. So the State did have the opportunity to make a showing and it didn't do that. Alitoso, when you say that the remedy should be tailored, tailored to what? What is the Court supposed to do, in your view? Select a punishment that is appropriate to deter the State from doing this again, or select a remedy that in some way undoes the damage or the prejudice that's been done to the defendant? Your Honor, Morrison speaks to this, and it requires that the Court fix a remedy that is tailored to the injury suffered from the constitutional violation. Okay. Well, then, in that situation, I don't know why reducing the sentence by the length of the unconstitutional delay, the supposedly unconstitutional delay, undoes the damage that's been done by the delay. Your Honor, it's a proportionate remedy because the defendant was denied, Mr. Betterman was denied access to these rehabilitation programs that aren't only good in themselves, as Barker recognized, but that also bear on his prospects for parole, on his case for parole or early release. And so the fact that he was denied access to them for a significant period of time bears on his ability to try to win early release. And this Court has recognized that any amount of time that the defendant has to spend in prison as a result of a Sixth Amendment violation is cognizable. And so we submit that it is proportionately tailored, even if the fit isn't perfect. Alito, Justice Ginsburg asked you about the Federal Speedy Trial Act, and you said that does not cover sentencing, but there are provisions of Montana law that do cover sentencing. Why didn't you seek relief under those? Your Honor, there are Montana statutes that require that sentencing take place within a reasonable amount of time and foreclose on reasonable delay. But we have been unable to find a case where the defendant was actually able to win some kind of relief on the basis of those statutes. As the Montana Supreme Court decision below reflects, the Court's view there was that those statutes incorporate due process principles. And so it would be due process principles that provided the relief, and we haven't found any case that gives any freestanding, independent relief on the basis of those statutes. If you look at the Rule 32 cases, because the Court's view is that it's not a matter of the statute. Roberts, did you bring a claim under those statutes? We did not, Your Honor. We did not. Ginsburg, would it be appropriate for the government to respond, yes, there are these disadvantages, but he had certain advantages, too, from being in jail. He was closer to his family. He was closer to his counsel, could confer more easily with counsel. Isn't it, wouldn't we have to consider the plus as well as the disadvantages? Certainly, Your Honor, if the prosecution offered that kind of evidence, it would weigh in the balance, and Barker itself discusses that. It notes that the Speedy Trial Clause is unusual in that delay in some instances may benefit the defendant. But here, where Mr. Betterman has submitted an affidavit and also in the initial motion detailed the prejudice that he suffered from this delay, inability to access these programs that he was ordered to complete as part of the suspended portion of his sentence that under Montana regulations would bear directly on his case for parole, the prejudice is palpable. It resonates strongly with Barker itself and with Smith v. Huey, where the Court noted that even if you're incarcerated on a prior charge, you may yet suffer prejudice as a result of delay in a subsequent prosecution. So back to Justice Sotomayor's question about Lovasco and about the difference between these two tests, we submit that if you compare the outcome here and compare the outcome in Burkett, Burkett involved a defendant who advanced a very similar theory of prejudice. The theory was he was denied access to rehabilitation programs and that he suffered anxiety. The defendant testified to that effect, and the Third Circuit concluded that in the absence of contrary evidence, that that was enough to state or to show a Sixth Amendment violation. Whereas in the decision below, the Montana Supreme Court placed the burden squarely on Mr. Betterman to make an affirmative showing of substantial prejudice. So even though he submitted this affidavit that detailed the prejudice, the Montana Supreme Court deemed it speculative. Sotomayor, my problem is with this use of language. Prejudice is prejudice. And they seem to be arguing that substantial prejudice means something like actual damages, that you could point to something that I've actually been damaged by either having served longer than the sentence that's ultimately imposed or something else like that. But why are you even taking on the substantial damage definition? Why aren't you just arguing that prejudice is prejudice? Well, it is, Your Honor, but Levasco actually uses the word actual. So the Levasco test that was applied by the Montana Supreme Court. You're still in the Levasco test. Yeah. I mean, if the court – that's the court, the due process test that the court has applied. Now, if the court were to say that the Barker test, including the way that Barker approaches prejudice, could be actionable under the due process clause, that would be a different story, but simply not the way that lower courts have examined it. That would effectively give a defendant Sixth Amendment relief under the due process clause. But that is not what the Montana Supreme Court did, Your Honor, and that is not the way that it applied. And that's not the way you're arguing the case. Well, Your Honor, we didn't preserve a due process challenge. Our challenge is solely under the Sixth Amendment. It's set forward in the question presented, and indeed, in the lower courts, we pressed a Sixth Amendment right. But to Your Honor's question, if the court were to take that Sixth Amendment analysis and drop it in the due process context, the defendant would certainly get the same relief. But we submit that just given that the right is enumerated in the Sixth Amendment, that it ought to be the relief ought to be granted under that clause and not shunted into due process. If there are no further questions, I'd like to preserve balance of my time. Roberts. Thank you, counsel. General Schoengart. Mr. Chief Justice, and may it please the Court. The Speedy Trial Clause does not include sentencing delay because its purpose is to protect a presumptively innocent defendant from the harms associated with a criminal charge. That purpose is consistent with the text and history of the clause. It's consistent with the remedy that this Court has said must apply to speedy trial violations. And importantly, it leaves defendants with other means of challenging unjustified  The Speedy Trial Clause is unique among Sixth Amendment rights because it goes to the heart of the government's authority to try a presumptively innocent defendant at all. If the government unjustifiably delays, it may forfeit the right, which is why dismissal is the remedy. Sentencing delay doesn't impact the validity of trial. It doesn't impact the authority of the government to bring a defendant to trial. And after conviction, none of the interests that are supported by the Speedy Trial Clause apply. For example, there can be no anxiety over public accusation because the accusation has been confirmed. At the moment of conviction, a defendant's liberty is justly deprived because and that's why bail is presumptively unavailable at that point. Ginsburg. When in your view, let's say we agree with you that speedy trial isn't the right rubric, when would a delay in sentencing amount to a due process violation? I think if a defendant could show prejudice, for example, if he was not able to present mitigating evidence at sentencing because of the passage of time he lost witness, that may be one example. If he's serving a – if he's awaiting sentencing for a time longer than the maximum sentence for the charge, that would be another example. But you would not count factors of the kind that were raised here. That is, I could have gotten into a drug treatment program in the penitentiary. It's not available in the jail. You would not include that. That's right, Justice Ginsburg. And the reason why, it's too speculative a basis. It's speculative whether rehabilitative programs or parole would have been available and whether the defendant would have taken advantage of them. And this case is a good example of that. It's not in the record because it happened after the Montana Supreme Court's decision. But the Petitioner was offered parole in March of 2014, conditioned on that he would fulfill a rehabilitation program. He started the rehabilitation program, and 16 days later he quit it. So his parole was rescinded. And that's the sort of speculative basis. I think it's too speculative a basis to give a remedy. But the defendant is always able to file a mandamus claim if he's – the sentence is harming him. He can first ask to be sentenced. The defendant in this case didn't mention it until nine months into the progress process. Kagan, there may be some real differences between the pretrial context and the pre-sentencing context, but one which seems quite similar is the potential of delay to impair the defense. So I guess I would like you to address that, because, you know, as the Petitioners point out, in most cases these days, most of the actual adjudication of contested issues goes on in sentencing, rather than at the trial stage, given that we don't have very many trials anymore. And certainly Barker and certainly Doggett made it very clear that this was an important interest in thinking about the speedy trial right. Bursch, Yes, Justice Kagan, a few points. First of all, I would say that, you know, that danger is equally at issue in pre-indictment delay, delay involving interlocutory appeal, which the Court held was not included in the speedy trial analysis in Loud Hawk v. United States. Second, so that can be remedied by due process, even if it's a similar interest. Second, there's a sense of Kagan, I think Levasco really talks about a whole different set of considerations in the pretrial context, which simply don't apply once the indictment, once the accusation has been made. Bursch, Perhaps not, but I think it would apply in the interlocutory appeal context, or even appeal in resentencing. I think those same considerations would be at issue. The delay could impact our retrial, if there's a retrial ordered on remand in a case. And those are interests that due process cause can remedy. But the other point is that sentencing is different. I mean, the same rules don't apply, and usually the same facts that aren't an issue. I mean, given the ubiquity of plea agreements, often the real action is in the plea bargaining anyway, and the prosecutor and the defendant agree on a sentence or a range of sentence, and then that's implemented by the judge. Kagan Well, sometimes, but there may also be real factual disputes. It might be about the amount of loss, it might be about the amount of drug quantity, it might be about prior bad acts, it might be about a whole range of things, which are the kinds of things that we actually typically think of as contested issues  Burschel That's true. I would argue that the due process provides adequate remedy in that situation. But there is a different standard, too. I mean, the rules of evidence don't apply, the Confrontation Clause doesn't apply, there's no burden to prove facts beyond reasonable doubt. So it is a different type of proceeding, and our argument is that due process can remedy any prejudice that happens with the delay. Sotomayor My problem, how do you prove, I mean, let's take an indeterminate sentence, more or less like this one, where you have the possibility of a sentence between 0 and 10 years. How do you, how does the judge know whether if the defendant is brought before him at year 8, 8½, 9, how does the judge know that if the defendant had been brought to him at year 5, he would have given him a 6-year sentence instead of an 8? Don't you think that there's a lot of pressure on the judge if the defendant's hearing is delayed for 8 years to say, time served? That really, don't you think there's prejudice in the fact that an unexplained delay caused by the State, more likely than not, had some sort of effect on the sentence? Burschel, Well, I think in that case, the defendant should, if it's that lengthy of a delay, he should ask to be sentenced. And like I said, he can always file a unanimous petition in that context. Sotomayor, Well, this defendant asked to be sentenced faster. He was told that there were other issues the court was dealing with. So a couple of the months were not his fault, clearly not his fault. It was an administrative fault. Burschel, That's true. There was not all the delay was his fault. But he didn't mention anything about wanting to be sentenced until 9 months into that process. When he filed a motion to do that. Sotomayor, I don't think there's any issue of whether, under a Barker analysis or any analysis, he should be heard to complain about the delay. But I'm still not quite sure why your definition of substantial prejudice or actual prejudice should be the controlling one. Burschel, I think the courts have, even the lower courts that have applied the speed of trial clause to sentencing delay, you know, the Tenth Circuit, for example, and Perez v. Sullivan, they assume that it applies on the one hand based on this, of course, decision in Pollard. But then on the other, they recognize that the interests don't apply. And they recognize that in order to fashion a remedy in a post-conviction setting, the defendant has to show prejudice. In addition, it takes into account that the balance has shifted. The person is no longer accused but convicted, and his presumption of innocence has vanished. Kennedy, assume that there is a prompt trial, then a very substantial delay in sentencing, and then there's an appeal, and the appeal results in new trial. Does the Speedy Trial Act then apply when the defendant says that my second trial was delayed? Are there cases on that? Burschel, I don't think so. I think generally when courts, the lower courts, are applying delay in the appellate context, resentencing context, they apply due process. And I can't think of cases that don't. Kennedy, because if that delay were attributable to the State, it seems to me there would be a Speedy Trial Act violation in that connection. Burschel, it may be. And lower courts, when they're looking at appellate delay or delay in resentencing, I mean, it's a pretty similar test as far as the Speedy Trial Clause is concerned when courts are applying it pre-sentencing, because it requires a showing of prejudice and it evaluates the government's reasons for the delay. Kennedy, but you're not aware of any cases of the kind I've indicated where the Speedy Trial Act then clicks in for the second prosecution? Burschel, I'm not aware of any cases. Alito, under Montana law, can a defendant who suffers inordinate delay in sentencing get relief? Burschel, certainly. There are rules on delay, prohibiting delay, just like there are in most States, if not every State, and under the Federal rules. There are specific procedures that put into place. Ginsburg, but Mr. Rowley indicated there are the rules there, but no defendants have had the benefit of getting their sentences shortened because of those. Burschel, well, I'm not aware of any defendant's pressing claims, any reported decisions on those claims one way or the other. But a defendant always has that option, and especially under Mandamus. And I think at that point, fashioning a remedy just for delay, I think is difficult, because my friend mentioned 14 years, but the delay, I mean, 14 months, the delay really wasn't 14 months of unjustified delay. Like I said, he didn't make his claim until 9 months, but before that, there's always going to be some delay in sentencing. Ginsburg, but the Court didn't say that the delay was principally caused by the Court's institutional problems. Burschel, it was. There were the Court took a while to decide post-conviction motions, and it was institutional delay. I don't disagree with that. But my point is that there's always going to be some delay in the process. And so to figure out what the remedy would be simply by including the entire 14 months, I think would be a windfall to the defendant, especially in this case where he's receiving credit on his sentence. Roberts Is that typical? Is it typical for a sentencing court to give credit for time served? Burschel, Yes. In fact, it's statutory. Roberts Is there any way they can do that when you have an indeterminate range, sentences zero to 10? Is there any way they can do that? Can they say it should be zero to nine in this case because of the delay? Burschel, I'm not sure. I mean, I think a judge could do that. I mean, in his the Petitioner's first conviction on domestic assault, he was awarded 53 days of credit for the sentence. And the Court specifically stated on the record that he took that into account and applied that against his sentence. Sotomayor Do you think the courts are, the judges are incapable of making determinations of a remedy? Burschel, Certainly not. No, I think, and I think under due process, that's the advantage of due process. Courts can fashion a remedy to target the specific prejudice, and I think they're well equipped to do that. Breyer Where did it come from that Parker v. Wingo prejudice is supposed to be assumed? I was just looking at the case. It doesn't say that. In fact, they analyze prejudice. Burschel, That's right. The Court has only presumed prejudice, I'm aware of, in one case, Doggett and the Doggett case. Breyer We held that? Burschel, You held that, but it was two things. Extraordinary delay. It was an eight-and-a-half-year delay between when a person was indicted and when they were brought to trial. And then it was all the court said, there was no justifiable reason for that delay. Breyer No, no. My question is, your brother counsel say that Barker v. Wingo, if it applied, would presume prejudice. So I've just been looking at that. And in the case itself, it doesn't presume prejudice. Burschel, It does not. Breyer So I want to know where that requirement of presumed prejudice comes from. Burschel, The first factor in Barker is to analyze whether. Breyer I know the four factors. I have them in front of me. Burschel, Yes. That's the presumptive prejudice factor gets you to the test. So it triggers the test. I think my friend is referring to the Doggett case, though. In his brief, he cites Doggett as sort of this, at some point, if the delay is so excessive, and I take it that he's not arguing that. Breyer So, I mean, obviously, it's a 20-year delay. The person won't even remember who he was going to call, and all the witnesses will be gone and so forth. So I think it's fair to say there was prejudice in such a case, if that's what it's about. And so if it isn't presumed all the time, do you have any objection, as he apparently does not have any objection, to our saying, you're right, it's the due process clause? Now, in applying the due process clause to cases where the sentencing has been unduly delayed, or that is the claim, you, the Court, should apply the factors as set out in Barker v. Wingo. Burschel, I think there's a couple of problems with that. One, Barker was specifically designed to take into account pretrial interests in this pretrial clause. And in the case that Justice Kagan mentioned, the forfeiture case, that was a preadjudicated adjudication case, so it fit in that context. So applying Barker, courts have done it, applied it. Sotomayor, I'm sorry, that was a forfeiture case, and that's a penalty after adjudication. The forfeiture doesn't start until someone's been found guilty. I think it was a pre-basically property was taken before the adjudication. Breyer, whatever the case is, I'd like to get an answer to my question. It says the Court should balance four factors. Length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. Now, if I quote that sentence and say those are the factors that should be taken into account under the due process clause, do you have any objection to that? Burschel, prejudice needs to take the forefront in that analysis. Breyer, I mean, I should just reverse the four. Burschel, well, the problem with Barker is that it holds that, I mean, in the post-conviction setting is that none of the factors are necessary. So prejudice doesn't necessarily have to be shown in Barker. Lower courts have modified that and said in the post-conviction setting, a defendant has to show prejudice. And the test that lower courts use, the modified Barker test, looks a lot like Labosco. In fact, I'd say it's indistinguishable, because prejudice. And prejudice is the key to the answer to your question, Justice Breyer, that in a post-conviction setting, that's what's necessary. It also, to my friend's point that the Petitioner made claims of prejudice, I'd point the Court to Joint Appendix 66 and 68, where he made his claim of prejudice in the space of a couple of paragraphs. And this sort of illustrates the problem the State has in rebutting claims of prejudice that aren't substantiated. He didn't file his affidavit, which was still fairly bare, but at least more substantiated, until three months after he filed his motion and the motion was denied as a motion to reconsider. So I think defendants in this context have to come forward with some showing of prejudice. Kagan in that might present some challenges, but there are also challenges on the other side. It's often hard to show that people have forgotten things. That's the, you know, they've forgotten them. So unless there's something like a witness dying, it's very difficult to make the kind of showing that you're suggesting. And that's why Barker, you know, left things flexible and said, you know, in most cases we really are going to look at prejudice, we're going to see what you have to say for yourself. In some extreme cases we're not going to do that. So, again, I guess I'm back with Justice Breyer's question, to say, yes, this is a case in which extreme considerations apply. The Court has never presumed prejudice except in the extreme cases. I wasn't suggesting presumed prejudice, just because Barker doesn't suggest presumed prejudice. As you say, the difference that Barker has with respect to your test is simply that Barker says it's not always necessary to show prejudice, that there are extreme circumstances in which we'll just take that for granted. I don't think that takes into consideration the change that happens at conviction. I mean, it's a substantial change. The interests of the society take the forefront. And to give the defendant a windfall, if he can come to court and say, you know, this delay is prejudice, maybe I'm not really going to do it.  Kagan.              Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And I think that because the act bodies won't look like they do every day as it does at the conviction stage, maybe in most cases more so, given that most of the action these days takes place in the sentencing phase, I guess I just wouldn't see why there's any need for a different rule, especially given the level of flexibility that Barker gives. It's not like Barker says we're presuming prejudice in all circumstances. Barker is saying prejudice is one of the four factors, and it's a very important one, and usually will expect people to come in with some kind of showing, except for in extreme cases when not. I think it comes down to remedy. I mean, the remedy for a speedy trial violation is dismissal. And so in the post-conviction stage that's what we said in Barker when we were talking about a pretrial case, but the remedy in this case would be different. Right, but it would be more difficult. If the defendant doesn't have to show prejudice, I'm not sure how you what the court would remedy. And that's one of the reasons that prejudice should be required, because there's got to be something, something that the court is actually remedying. And even in the speedy trial cases, the courts usually require some showing. Alitoso, and when it comes to the determination of facts that are relevant at sentencing, that does not take place exclusively or probably even it doesn't take place primarily at the time when the sentence is pronounced. Isn't that correct? It takes place during the preparation of the pre-sentence report, at least in the Federal system. Is that true in Montana as well? Verrilli, Yes. Yes, Justice Alito, that's exactly right. Most of the facts are analyzed through that pre-sentence report, and speedy and sentencing hearings at that point are pretty drab affairs because most of the facts have been resolved. Thank you. Roberts. Thank you, counsel. Ms. Anders. Mr. Chief Justice, and may it please the Court. To go right to Justice Kagan's concern about the possibility that a defendant's defense at sentencing could be impaired, we think the due process analysis is adequate to address that. And we think that's so because although the defendant has to show prejudice, the prejudice standard should essentially be the same one that applies in cases of other violations of constitutional rights that may affect the defendant's ability to defend at sentencing. And that is the defendant should have to show that there is a reasonable probability that the result would have been different, the outcome would have been different. That is the same standard that's used in cases of Brady violations, of ineffective assistance of counsel. It's one that doesn't require the defendant to show by preponderance that he would have received a different sentence or anything like that. He just has to show that he suffered prejudice, that when you take all the evidence into account, it puts the outcome in a different way. Kagan. And how do you see that it's different from what goes on under the Barker analysis? Well, I think under Barker, the Court does allow for prejudice to be presumed in some cases, so the defendant does not have to show, make any kind of concrete or particularized showing of prejudice. We think that in the case of sentencing, prejudice at sentencing, that the defendant should have to show some concrete effect, some concrete effect. But I take it that we've said that that's the case where the delay is super long, so take a delay of 8 or 10 years. And, you know, why is it in that very extreme circumstance that the defendant should make, that the defendant should have to make any particularized showing? Well, I think the defendant may well be able to make a particularized showing in that case. But I think there are two primary reasons that it's just not appropriate in any case for prejudice to be presumed at sentencing, and the first one of those is that I think the constitutional rule has to take into account the wide range of sentencing proceedings here. So when we're talking about pretrial delay, I think, you know, all trials involve historical facts that in theory could be affected, could be prejudiced by delay. That's not the case of all sentencing hearings. There are, you know, fully discretionary systems where historical facts would not have as great an effect. There are sentencings that turn mostly on the present characteristics of the defendant rather than on historical facts. So I think prejudice should not be presumed in any case, but in a situation where the defendant actually will be affected, the process analysis is tailored enough to allow him to have relief in that situation. And I think the second reason it's not appropriate ever to presume prejudice at sentencing is that the conviction changes everything, right? Once a defendant has been convicted, there's a strong societal interest in giving him an appropriate sentence. And so to give him a remedy for pre-sentencing delay, I think, involves generally the remedy is going to involve lowering what would otherwise be an appropriate sentence. So in that context, I think it's appropriate to require the defendant to show some actual injury in order to justify the societal cost of lowering an otherwise appropriate sentence. Sotomayor, in the Federal system, do the judges typically give credit for time served? They do, yes. Your rule would apply to capital cases as well? Well, I think capital cases may be different. I think the Court has said that in some contexts, for instance, double jeopardy, the capital sentencing is essentially, in some respects, an extension of the trial. So in that situation, you may say the same thing with respect to speedy trial claims as well. But I'm sorry, could you say a little bit more than that? You would say because the penalty phase really is a trial? I think there are some respects in which you treat the penalty phase as a as an extension of the trial, yes. I think, finally, the other reason that it's not appropriate to presume prejudice at sentencing is that in the pre-indictment context, of course, the Court has said that the core interests of the speedy trial clause aren't implicated, and therefore, even though that kind of delay, pre-arrest delay, may have the same sort of effects on the trial that are, you know, prejudice that is hard to articulate, that in that situation it's not appropriate. But the defendant is at liberty in pre-indictment delay. That's right. And that's why the core concerns of the speedy trial clause aren't implicated in that scenario, that the speedy trial clause isn't implicated because the defendant's liberty interest hasn't been restrained by the indictment. But a similar thing happens after conviction. At that point, the defendant doesn't have a cognizable liberty interest, a cognizable interest in avoiding the detriments that can be imposed on him as a result of the conviction and as an incident of the sentence. Sotomayor, if we take out the presumed prejudice, which is not part of the Parker analysis, it just defines prejudice, how would using the Parker standard and saying no presumed prejudice, you have to prove some prejudice, how would that change the analysis? Well, I think there's one other difference, I think, in the two approaches, aside from the presumed prejudice, and that is what counts as cognizable prejudice. So I think in the due process context, the Court said in Merion that the type of prejudice we're concerned about is actual prejudice to the defense of a criminal case. Sotomayor, that's for the pretrial. Right. But what that we think what that means in the sentencing context is that the defendant should have to show a concrete effect on his defense at sentencing, in other words, the probability that the result would have been different or, you know, that he's been serving longer time than he should have been. But I think it also means that things like, you know, access to rehabilitation programs, anxiety, that those would not be independently cognizable as prejudice under the due process inquiry. Sotomayor, do you think that if a defendant was writing to a judge every week saying, I'm anxious, I really need to know what my sentence is, and the judge ignores it for a period of time, that that defendant still has to prove something more? That's not the facts of this case. There was no complaint for 9 months, and whatever treatment the defendant started for anxiety started well before any time had elapsed in this sentence. But you don't think that defendant is entitled to any consideration by a trial court, or that we should be barring a trial court from considering that? Two points with respect to that. I mean, certainly if a defendant is asking for sentencing and the court is ignoring that, that would be inappropriate. The defendant would obviously have other remedies, I think, at that point after requesting sentence, perhaps mandamus, perhaps a habeas petition. But if all the only prejudice that he's claiming is anxiety, then yes, I do think that that would not be cognizable under due process. And I think that's really because once a defendant has been convicted, he can be now can be sentenced, he can be subject to the practical deprivations that are an incident of sentence, and I think that after he's been sentenced, of course, he doesn't have an interest in not being anxious, that kind of thing. And so I think it would be very odd to say that he has a sentencing delay-related interest in that kind of claim that could be the basis for a constitutional violation. Kagan. Kagan. I'm sorry. One of the things that strikes me as odd about your argument is that you are suggesting that a remedy would be appropriate in certain circumstances. You just want to put this under the due process clause. And what's odd is that, as you say, that in this post-conviction context, the President the defendant has been deprived of any liberty interest, and yet the due process clause talks about a deprivation of liberty. But the defendant no longer has a liberty interest. So it seems a very odd place to park this right and this remedy, the due process clause, in this context. It seems much more natural that you would do it under the speedy trial clause on the assumption, on the view that the trial has to do with both the adjudication of guilt and the determination of the proper sentence. Well, two points with respect to that. I think if the Court were to say, to use the standard that we proposed, so essentially no presumed prejudice, only certain things are cognizable as prejudice, and the remedy would not always be vacated under the conviction, then I think we probably wouldn't have a practical objection to calling that a speedy trial clause right. What we are concerned about is the substantive standard and the remedy. But I do think after a defendant has been convicted, the societal interests have shifted, and that's why it's appropriate, I think, to apply due process. The defendant has a liberty interest in the length of his sentence. He has a due process interest in a fundamentally fair sentencing proceeding. And so we think due process nicely captures that interest that the defendant has. And so the Court has said before arrest, before a speedy trial kicks in, due process applies and it provides a right.  Thank you, Your Honor. There are no further questions. Roberts. Thank you, counsel. Raul, you have 10 minutes remaining. The standard for prejudice articulated by the United States shows well why due process protections are ill-suited to the specific interest protected by the speedy trial right. The United States suggested that the defendant would have to show that the outcome would have been different. Consistent with Lavasco, the only form of prejudice that would be cognizable under that test is an effect on the defendant's defense at sentencing. But as Barker illustrates and Smith v. Huey also illustrates, there are other forms of prejudice that are specific to the speedy trial clause that may apply to a defendant and, indeed, may apply to a defendant even after they've been convicted. So, for example, in Smith v. Huey, the defendant had already been incarcerated on a prior Federal charge. That defendant's liberty interests were already impinged, and yet the Court noted that the delay from the follow-on prosecution could still prejudice him. So this notion that you would apply a due process test or the Lavasco test and require a showing, an affirmative showing, that the defendant would have had a different outcome at sentencing but for the delay really highlights why due process is inadequately suited. Justice Kagan's question points to another anomaly in the test that has been proposed by the government because of this focus on liberty interests. And in Smith v. Huey, the defendant already was. Kennedy, I suppose if it isn't liberty, it's not incorporated under the Fourteenth Amendment anyway. Yes, Your Honor, but. The Sixth Amendment applies only to the Federal government, and it's only because of the Fourteenth Amendment liberty that applies to the States. So liberty is involved. Yes, Your Honor, but the position that the State of Montana and the United States have taken is that at sentencing, once a defendant has been convicted, they don't have a specific liberty interest of the kind that was recognized in Barker and the kind that was recognized in Smith v. Huey. And that is the interest in rehabilitation, in accessing rehabilitation programs that could be affected by a delay in a prosecution. Breyer. So is liberty a certain effect that he's in jail? So he's sitting there in jail, tell him you're free, I don't think he believes it. And then the question is, is at some point his being in jail a deprivation of his liberty without due process? Because the due process clause would require application of sentencing under and when it's not due process when, say, Barker v. Bingo or some violation is violated. But I don't see a problem with liberty. Well, Your Honor, the point is simply that the speedy trial test that the Court articulated in Barker is better suited to the specific forms of prejudice that are at issue in this case, because it addresses this concern with even a defendant who's been guilty, accessing rehabilitation programs, or the anxiety that that defendant may feel at the sentencing stage. And this gets to another point that the United States made, and that is that the conviction changes everything. Because the concerns that the Court articulated in Barker may be yet more significant at the sentencing stage, given that most convictions today result from guilty pleas. And so the fact that a defendant, their defense may be impaired by a delay in criminal proceedings may be more significant at the sentencing stage, because it may be the only place where the defendant challenges an upward adjustment or contests facts. The fact that the defendant may need to access rehabilitation programs may be more pronounced at sentencing, because the defendant's already been convicted, they're going to serve time, and they want to get access to the programs that they'll need to get parole as soon as possible. So we submit that Barker is the appropriate test, that if the Court agrees that Barker is the appropriate framework, that the proper right to ground that analysis in is the Sixth Amendment and not the Due Process Clause. And that is particularly so because of the antecedents of the Due Process Clause, which apply not just to the guilt stage of the prosecution, but also to sentencing. And why? Because at common law and at the time of the framing, sentencing and the jury verdict were so closely bound. And the right is rooted in this practice of circuit justices riding into the countryside and resolving cases, not just presiding over jury trials, but resolving cases. They had the power to hear and decide those cases. Their jurisdiction was from the beginning of the prosecution through the end. So we think the Sixth Amendment is the appropriate basis for this right. Alito, at the time of the adoption of the Sixth Amendment, weren't post-trial but pre-sentencing delays fairly common? Your Honor, the Stevens Treatise says that at the time, at common law, that sentencing took place usually, not always, usually soon thereafter. Usually, but not always. That's right, Your Honor. But as a general rule, the sentencing did take place soon after the jury issued its verdict and oftentimes immediately. And the cases that we catalog in our appendix illustrate that point. But it's not just that. As the Court has recognized, the sentence was usually automatic. It flowed from the jury verdict. Alito, that's just not true as a historical matter. It's not true as a historical matter. If you look at the first criminal provisions that were enacted by Congress, they called for a range of sentences, and the sentencing judge had to select within that range. Justice Alito, I'm just saying that. I'm talking about the early 18th century, not when you say that it was automatic. Your Honor, I'm referring to the observations that this Court has made in the Apprendi line of cases, and it is the early part of the 18th century because, as the Court has noted — I'm sorry, in the early part of the 19th century, because, as the Court has noted, States started to adopt statutes that gave sentencing courts more discretion. But certainly at common law, certainly at the time of the founding, the Court noted that typically the verdict dictated the sentence.  Alito, we don't have the right to change history. It isn't true. The first — if you look at the very first criminal provisions that were enacted by Congress, the first Congress, they were not — it was not determinate sentencing. Your Honor, many of the — for many crimes, serious crimes at common law, and even for some that today we would consider not so serious, usually the penalty was death. And so there was this close relationship. The Court has called it a close relationship between the verdict and sentencing. And we submit that that, together with the way that the process was consulted — was conducted, shows that the right was created to cover the whole proceeding through the imposition or pronouncement of sentence. If there are no further questions. Roberts. Thank you, counsel. The case is submitted.